In the Matter of J. Douglas LiBassi. June 5, 2007. *Attorney at Law,* Disbarment, Commingling of funds.

The respondent, J. Douglas LiBassi, appeals from a judgment of a single justice of this court ordering that he be disbarred and that the disbarment be effective on entry of the judgment. We affirm the sanction of disbarment but order that it be retroactive to May 14, 2002, the date that the respondent came into compliance with an order of temporary suspension.

*Background.* In February, 2002, the respondent assented to a temporary suspension of his license to practice law after bar counsel received a formal complaint from one of the respondent's clients, Edward Morgan, regarding the alleged mishandling of client funds. Morgan hired the respondent in early

1999 to represent him in connection with his purchase of his parents' home. The respondent held mortgage proceeds for Morgan totaling approximately $80,200, including $15,000 to be held in trust for Morgan's parents. Although the respondent properly disbursed some of the funds, which were originally deposited in a general non-IOLTA client funds account for mortgage payments and other bills associated with the home, he also disbursed funds from this account for other purposes not related to the Morgan expenses. As of June 15, 2000, the respondent should have been holding $67,831.56 of Morgan funds in escrow, but, as of July, 2000, he had a balance in his client funds account of only about $27,000. When he subsequently closed that account, in November, 2000, the balance was $23,538.95, $5,000 of which he misappropriated by transferring it to his business operating account. He further misappropriated funds by placing the remaining amount — $18,538.95 — in a non-IOLTA account, which he began to use as a combined client funds account and business operating account. The respondent disbursed $8,000 from that account to Morgan for mortgage payments, in February, 2001, reducing the balance to $10,538.95. Although no further disbursements were made for mortgage payments until September, 2001, the balance in the account fell to only $3,367.95 by March 30, 2001, and to $2,030.85 by April 30, 2001.

Then, in January, 2002, following a probate proceeding between Morgan and his sister related to the conveyance and ownership of the Morgan home, the Probate and Family Court ordered the payment of $15,000 from the mortgage proceeds to Morgan as trustee for his parents. The balance of the mortgage proceeds was to remain in escrow and be used to pay property-related expenses. The respondent, who represented Morgan in the probate proceeding, filed a fee affidavit claiming fees and costs in the amount of $49,050.16. He improperly included time spent responding to bar counsel's investigation, which had by then already commenced, and failed to credit Morgan for prior payments. The judge reduced the fees to $37,676.25 and, having learned by then that the respondent had failed to hold the Morgan funds properly, ordered Morgan's sister to pay the respondent's fees, plus his costs, directly to Morgan. The judge also specifically ordered that the payment be first applied to the trust for Morgan's parents.

Although the respondent assented to the order of temporary suspension in February, 2002, he did not immediately comply with all of its terms, which included notifying all of his clients of his temporary suspension and filing notices of withdrawal in all pending matters. Despite submitting an affidavit of compliance to bar counsel in which he represented that he had complied with the terms of the order, the respondent continued to represent a client in a matter then pending in the Probate and Family Court (Henderson matter). He did not notify his clients, opposing counsel, or the court of the temporary suspension. Additionally, between February 7, 2002, and March 19, 2002, he made payments to himself from an account in which he was supposed to be holding funds in escrow related to the Henderson matter. Only after bar counsel learned of and objected to the respondent's continued activity did the respondent come into compliance with the temporary suspension order, on May 14, 2002.[1]

---

[1]On that same day, the respondent turned over the full amount of funds that he was supposed to be holding in escrow in the Henderson matter to successor counsel in that case.

Then, in August, 2003, bar counsel filed with the Board of Bar Overseers (board) a two-count petition for discipline alleging that the respondent had intentionally misused client or fiduciary funds and had made intentional misrepresentations under oath to bar counsel and this court in connection with the temporary suspension. A hearing committee found that the respondent had violated a number of the Massachusetts Rules of Professional Conduct, including Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998); Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998); Mass. R. Prof. C. 1.15 (a), (b), (d), (e), 426 Mass. 1363 (1998); Mass. R. Prof. C. 1.16 (a)(1), (c), (d), 426 Mass. 1369 (1998); Mass. R. Prof. C. 3.4 (c), 426 Mass. 1389 (1998); Mass. R. Prof. C. 5.5 (a), 426 Mass. 1410 (1998); and Mass. R. Prof. C. 8.4 (c), (d), (h), as amended, 429 Mass. 1301 (1999), as well as S.J.C. Rule 4.01, § 17 (1)(a)-(e) and (g), (3), (5), (6), as amended, 426 Mass. 1301 (1997). The committee recommended that the respondent be disbarred. The board unanimously agreed and recommended disbarment retroactive to May 14, 2002, the date that the respondent complied with the February, 2002, order of temporary suspension. An information was filed in the county court and heard by the single justice, who issued a judgment of disbarment effective on entry of the judgment.

*Discussion.* "We review de novo the question of the appropriate level of discipline to be imposed. *Matter of Kennedy,* 428 Mass. 156, 156 (1998). Our goal is to ensure that the sanction ordered by the single justice is not markedly disparate from what has been ordered in comparable cases. *Matter of Tobin,* 417 Mass. 81, 88 (1994). *Matter of Palmer,* 413 Mass. 33, 37-38 (1992). *Matter of Alter,* 389 Mass. 153, 156 (1983). While the review is de novo in the sense that no special deference is given to the single justice's determination, we, like the single justice before us, must be 'mindful that the board's recommendation is entitled to substantial deference.' *Matter of Tobin, supra.* See *Matter of Palmer, supra* at 40; *Matter of Alter, supra* at 157-158." *Matter of Doyle,* 429 Mass. 1013, 1013 (1999). In cases involving the conversion or misappropriation of client funds, the "presumptive sanction" is disbarment or indefinite suspension. *Matter of Cobb,* 445 Mass. 452, 479 (2005), citing *Matter of Schoepfer,* 426 Mass. 183, 186 (1997). "The intentional use of clients' funds normally calls for 'a term suspension of appropriate length.' See [*Matter of the Discipline of an Attorney,* 392 Mass. 827, 836 (1984)]. If additionally an attorney intended to deprive the client of funds, permanently or temporarily, or if the client was deprived of funds (no matter what the attorney intended), the standard discipline is disbarment or indefinite suspension. *Id.*" *Matter of Schoepfer, supra* at 187.

Here, not only did the respondent clearly mishandle client funds, including depriving Morgan's parents of the $15,000 that was supposed to be held in trust for them, but he also failed to comply with the temporary suspension order. He continued to practice law, by providing representation in the Henderson matter, and made intentional misrepresentations both to bar counsel and to this court by stating, under oath, that he was complying with all of the terms of the temporary suspension order. In these circumstances, disbarment is an appropriate sanction. See *Matter of Cobb, supra* at 480 (aggravating factors warranted disbarment of attorney who mishandled client funds); *Matter of Bryan,* 411 Mass. 288, 292 (1991) (attorney's failure to comply with terms of suspension was factor in choosing between disbarment and indefinite suspension).

The respondent argues that his restitution of the Morgan funds should be considered a mitigating factor in determining the appropriate sanction. He is correct that the court generally considers whether restitution has been made in choosing between disbarment and indefinite suspension. *Matter of Hollingsworth*, 16 Mass. Att'y Discipline Rep. 227, 236 (2000). Although the respondent has now repaid the Morgan funds, he did so only after he and Morgan reached a settlement of a lawsuit that Morgan commenced in the Superior Court seeking the return of the funds. Recovery obtained through court action "is not 'restitution' for purposes of choosing an appropriate sanction." *Id.* Cf. *Matter of Bryan, supra* (absence of restitution was factor in choosing between disbarment and indefinite suspension).

The respondent next argues that undue delay during the disciplinary process deprived him of his right to due process. We recently addressed the issue of delay in bar disciplinary proceedings and determined that "delay in the prosecution of attorney misconduct does not constitute a mitigating factor absent proof that the delay has substantially prejudiced the defense, or evidence of the resulting public opprobrium." *Matter of Grossman*, 448 Mass. 151, 152 (2007). Here, as in the *Grossman* case, the respondent has established neither. The delay, therefore, does not warrant the imposition of a lesser sanction. Furthermore, we do not agree with the respondent that the hearing committee erred in excluding certain expert testimony relevant to his claims that he suffered from medical conditions that should mitigate the sanction imposed. As the board noted, the hearing committee was well within its discretion to preclude the testimony because the respondent failed to comply with the deadlines set forth in a prehearing order regarding expert testimony.[2]

We turn finally to the issue of the effective date of disbarment. The board recommended that the disbarment be retroactive to May 14, 2002, the date that the respondent came into compliance with the February, 2002, order of temporary suspension. Bar counsel, however, argued against retroactive application because the respondent failed to comply with the terms of his temporary suspension and failed to cooperate fully in the disciplinary process.[3] Despite the respondent's initial failure to comply with the suspension order, he did ultimately come into compliance with it. In these circumstances, the retroactive application of disbarment is appropriate. *Matter of Douka*, 14 Mass. Att'y Discipline Rep. 225, 228 (1998) (disbarment retroactive to date of compliance with temporary suspension order). *Matter of Metaxas*, 12 Mass. Att'y Discipline Rep. 306, 308 (1996) (disbarment retroactive to date respondent came into compliance with temporary suspension order). Cf. *Mat-*

---

[2]Additionally, on the basis of expert testimony and other medical evidence that the respondent was able to present, the hearing committee concluded that the respondent failed to meet his burden of showing that he was affected by the claimed conditions — a chemical (alcohol) dependency and mental disability — during the relevant time period or that the claimed conditions caused the misconduct. As the board noted, the only expert testimony that was excluded was the opinion of a nontreating therapist, and the exclusion of that testimony did not prejudice the respondent.

[3]For example, the respondent failed to provide an adequate accounting of what happened to the Morgan funds, leaving to bar counsel the task of trying to trace the respondent's handling of the money. He also resisted providing certain medical information to bar counsel and the hearing committee related to medical conditions that he claims should have been considered in mitigation.

*ter of DeBole*, 13 Mass. Att'y Discipline Rep. 118, 120 (1997) (disbarment effective on date of entry of judgment where attorney failed to comply with requirements of temporary suspension).

Accordingly, the case is remanded to the county court, where the judgment of disbarment is to be modified as retroactive to May 14, 2002. As so modified, the judgment is affirmed.

*So ordered.*

*J. Douglas LiBassi*, pro se.

*Susan A. Strauss Weisberg*, Assistant Bar Counsel.