NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11935

MATTER OF EVAN A. GREENE.


December 2, 2016.


Attorney at Law, Disciplinary proceeding, Suspension.


The respondent attorney, Evan A. Greene, appeals from the order of a single justice of this court indefinitely suspending him from the practice of law.[1]  We affirm.

Background.  Bar counsel filed an amended three-count petition for discipline with the Board of Bar Overseers (board) against the respondent arising out of his participation in certain residential mortgage foreclosure "rescue transactions" during 2005 and 2006.  At the time, the respondent worked with his father, Attorney Barry D. Greene, at a law firm specializing in real estate transactions.[2]  Count one of the petition described seven similar transactions.  In each instance, a mortgage broker referred to the Greenes a homeowner who had either defaulted on a mortgage or was facing foreclosure, or both, but who had substantial equity in the property.  The broker was paid a referral fee.  The respondent (or his father) arranged for financing to purchase the property, and then entered into a purchase and sale agreement with the homeowner.  The respondent (or his father) also entered into a lease with the former owner, whereby he or she could remain in the

_____

[1] This bar discipline appeal is subject to S.J.C. Rule 2:23 (b), 471 Mass. 1303 (2015).  Pursuant to the rule, we dispensed with oral argument, and we decide the case on the basis of the materials filed by the respondent.

[2] Barry D. Greene has been the subject of separate bar disciplinary proceedings.

property, and a one-year option-to-repurchase agreement. In most cases, the lease payments exceeded the amount of the monthly mortgage payments. In addition, each option agreement required the homeowner to pay a nonrefundable fee ranging from $27,000 to $50,000. All of the homeowners defaulted on their monthly payments; only one homeowner exercised the option to repurchase.

According to the petition for discipline, the respondent personally or through an associate made various misrepresentations on mortgage applications; misrepresented the terms of the transactions on HUD-1 settlement statements; executed and delivered false documents to the lender; and failed to notify the lender of the existence of the lease and option agreements. The petition additionally alleged that, by directing or permitting on more than one occasion an associate attorney of his firm to represent the lender in a transaction in which one of the Greenes was a borrower, without the lender's consent, the respondent engaged in conflicts of interest.

Count two of the petition alleged that the respondent had been convicted in the United States District Court for the District of Massachusetts on twelve counts of violation of 12 U.S.C. § 2607(a) (real estate kickbacks and unearned fees) arising from some of the same transactions.[3] The twelve convictions involved five of the seven transactions that were the subject of count one. Count three of the petition for discipline involved falsification of a HUD-1 statement to include a fictitious fee.

After a hearing at which the respondent was represented by counsel, a hearing committee of the board recommended that the respondent be indefinitely suspended from the practice of law. It also recommended that he be permitted to apply for reinstatement nineteen months early, recognizing that he had been temporarily suspended for just over nineteen months following his criminal convictions.[4] The respondent appealed to

---

[3] Title 12 U.S.C. § 2607(a) provides, "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

[4] The respondent was temporarily suspended during the period of his incarceration, and for a number of months thereafter.

the board, and bar counsel cross-appealed. The board adopted the hearing committee's report and recommendation, and filed a corresponding information in the county court pursuant to S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009). After hearing, the single justice concluded that the board's findings were supported by substantial evidence. See id. He ordered that the respondent be suspended from the practice of law indefinitely, and that the respondent could "petition for reinstatement nineteen months before he would otherwise be entitled to apply for reinstatement under S.J.C. Rule 4:01, § 18 (2) (b)," as appearing in 453 Mass. 1315 (2009). The respondent appeals to the full court, arguing that the sanction is too harsh.[5]

Discussion. We review the disciplinary sanction imposed by the single justice de novo, to determine whether it "is markedly disparate from those ordinarily entered by the various single justices in similar cases." Matter of Alter, 389 Mass. 153, 156 (1983). See Matter of Daniels, 442 Mass. 1037, 1038 (2004). We consider the "cumulative effect of the several violations committed by the respondent," Matter of Palmer, 413 Mass. 33, 38 (1992), and, like the single justice, we give "substantial deference to the board's recommendation." Matter of Foley, 439 Mass. 324, 333 (2003). See Matter of Ellis, 457 Mass. 413, 415 (2010); Matter of Doyle, 429 Mass. 1013, 1013 (1999). In this case, the board's recommendation of an indefinite suspension is predicated primarily on the respondent's twelve criminal convictions and his dishonesty with respect to four HUD-1 forms, as well as on substantial aggravating factors that the board took into account.

a. Criminal convictions. The respondent pleaded guilty to twelve counts of violating 12 U.S.C. § 2607(a) by giving real estate kickbacks to brokers and by giving and receiving fees to or from individuals employed with mortgage broker entities. For those convictions, he was sentenced to twelve months and a day in prison, and fined $10,000. The board accepted the committee's conclusions that the guilty pleas constituted convictions under S.J.C. Rule 4:01, § 12 (1), as appearing in 425 Mass. 1313 (1997), and that the criminal acts "reflect[ed] adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Mass. R. Prof. C. 8.4 (b), 426 Mass. 1429 (1998). It recommended a two-year suspension for the

---

[5] In the county court, the respondent raised additional claims that he does not press on appeal. We do not consider them.

criminal conduct alone. The recommendation is warranted. The respondent's criminal conduct occurred over the course of at least ten months, involved twelve different transactions, and resulted in twelve separate convictions, a prison sentence, and a substantial fine. It is more egregious than the conduct in Matter of Hochberg, 9 Mass. Att'y Discipline Rep. 165 (1993), a case substantially relied on by the respondent. In Hochberg, the respondent was convicted of a single count of accepting an unearned fee, in violation of 12 U.S.C. § 2607(b), and was sentenced to three years' probation. He was also required to disgorge the $148,043.77 in kickbacks that he had received over the course of several years. Pursuant to a stipulation, the respondent was suspended for one year. In this case, there was no stipulation as to sanction, and although there are certain similarities with Hochberg, the respondent's multiple criminal convictions, his incarceration, and the imposition of a fine support the board's conclusion that the criminal conduct established by the respondent's convictions was more egregious than Hochberg's and, therefore, that a greater sanction is appropriate.

Had the respondent's criminal misconduct been the only basis for discipline (although, as set forth below, it was not), we would be satisfied that a two-year suspension would be comparable to other cases involving similar criminal convictions. In Matter of Rendle, 5 Mass. Att'y Discipline Rep. 310 (1987), for example, the respondent was suspended for two years following his conviction of aiding and abetting the unlawful receipt of a gratuity, in circumstances wholly unrelated to the practice of law. See Matter of Concemi, 422 Mass. 326, 330 (1996) (commission of criminal acts in connection with practice of law considered in aggravation). In Matter of Grew, 23 Mass. Att'y Discipline Rep. 232 (2007), the respondent was suspended for one year following conviction on a single count of misdemeanor insurance fraud, but the fraud was not consummated and it occurred outside the practice of law. See also Matter of Andrews, 21 Mass. Att'y Discipline Rep. 11 (2005) (eighteen-month suspension, by stipulation, for two misdemeanor convictions of conversion of public money); Matter of Tatel, 4 Mass. Att'y Discipline Rep. 138, 140 (1984) (imposing indefinite suspension on attorney who pleaded guilty to three violations of G. L. c. 268A, § 3 [a], prohibiting giving thing of value to public official in exchange for official act).

b. HUD-1 violations. Although the respondent's criminal convictions concerned kickbacks and unearned fees in some of the same transactions described in count one of the petition, the

misconduct that is the subject of the remaining counts was different and warrants additional discipline. The hearing committee's findings, adopted by the board, establish that the respondent violated multiple rules of professional conduct, directly or through an associate attorney, by purchasing homes from financially distressed homeowners, leasing the homes back to the homeowners under oppressive terms, and intentionally misrepresenting the terms of the transactions on HUD-1 forms. The board additionally found that the respondent prepared or caused to be prepared fraudulent documents four separate times, and caused an associate attorney to make false certifications three times. On account of this misconduct, the board recommended a two-year suspension in addition to the two-year suspension for the criminal misconduct.

Disciplinary decisions involving false or fraudulent HUD-1 statements are heavily dependent on their facts. For that reason, attorneys have been disciplined with term suspensions ranging from six months, Matter of Komack, 429 Mass. 1025 (1999), where a single transaction was involved, to two years, Matter of Marks, 23 Mass. Att'y Discipline Rep. 438 (2008), where four transactions were involved and aggravating factors were present. In Matter of Foley, 26 Mass. Att'y Discipline Rep. 199 (2009), an eighteen-month suspension was imposed where the attorney and his subordinate executed false HUD-1 statements in twenty-four transactions. We conclude that the respondent's misconduct was more egregious than Foley's, because he was an investor in the transactions and because the misrepresentations were made to his firm's clients. Had the HUD-1 violations been the only basis for discipline, we would be satisfied that a two-year suspension is not markedly disparate from the sanctions imposed in comparable cases.

c. Other factors. We have considered the respondent's claims of mitigation, which include his payment of settlement money (without an admission of wrongdoing) in an action brought by the Attorney General; the absence of any prior record of discipline; cooperation with bar counsel; and inexperience. For the most part, these are the type of "typical" mitigating circumstances that do not count in a respondent's favor. The board correctly declined to weigh them in mitigation, and we do as well. See Matter of Alter, 389 Mass. at 157 (typical factors include satisfactory professional record; cooperation in disciplinary proceedings; criminal proceedings and punishment; and absence of resulting harm). We make two additional observations. First, with respect to the respondent's experience in the law, although he had been practicing law for

only about four years when the misconduct occurred, his testimony was that he had seen "thousands" of closing documents and had conducted "hundreds" of closings.  He was not inexperienced.  Second, although the respondent asks that we weigh in mitigation the payments he made to settle a lawsuit brought by the Attorney General related to the respondent's misconduct, we have said that payments made by a respondent pursuant to a settlement agreement deserve little if any consideration for bar discipline purposes.  See Matter of Libassi, 449 Mass. 1014, 1017 (2007) ("Recovery obtained through court action 'is not restitution for purposes of choosing an appropriate sanction'" [citation omitted]); Matter of Concemi, 422 Mass. at 330.

The board recommended a two-year suspension for the misconduct underlying the respondent's criminal convictions alone, and an additional two-year suspension for the multiple HUD-1 violations.  In addition, the board also took into account the evidence of the aggravating factors in arriving at its over-all recommendation of an indefinite suspension.  With respect to aggravating factors, the board credited the hearing committee's findings that "the respondent's conduct . . . was 'motivated by a desire to benefit himself financially; he took advantage of unsophisticated, and vulnerable clients; he was experienced in real estate law; and his testimony 'evinced a lack of candor.'" Matter of Lupo, 447 Mass. 345, 354 (2006).  These findings are well supported by the evidence.  The respondent engaged in transactions with unrepresented homeowners on terms highly unfavorable to them without advising them to seek independent legal representation; failed to disclose adequately to the homeowners the details and risks of the transactions; gave them self-interested advice; and either failed to provide them with the transactional documents or did not allow a sufficient time for a meaningful review.  He also failed to disclose to his firm's lender clients his self-interest in the transactions. The respondent, in short, abdicated his professional obligations by engaging in "conduct that adversely reflects on his . . . fitness to practice law."  Mass. R. Prof. C. 8.4 (h).  See also Mass. R. Prof. C. 8.4 (c).

We give substantial deference the board's determination. See Matter of Grella, 438 Mass. 47, 55 (2002).  We accept the board's recommendation of sanction in this case.  Considering all the circumstances, an indefinite suspension is appropriate and "necessary to protect the public and deter other attorneys from the same behavior."  Matter of Concemi, 422 Mass. at 329. See also Matter of Luongo, 416 Mass. 308, 312 (1993) (indefinite

suspension imposed where multiple violations involved, "two of which standing alone call for a [term] suspension"). In the ordinary course, a respondent who has been indefinitely suspended may apply for reinstatement three months before the expiration of five years from the effective date of the suspension. See S.J.C. Rule 4:01, § 18 (2) (<u>b</u>). Mindful that the respondent has already been suspended for nineteen months (including the period when he was incarcerated), we also accept the board's recommendation that he be permitted to apply for readmission three years and two months from the effective date of the indefinite suspension.

    <u>Conclusion</u>. Not only did the respondent use his professional training and experience to take advantage of vulnerable homeowners in precarious financial positions, but he also violated Federal law, concealed the nature of the transactions from his lenders and his firm's clients out of a self-interested motive, and engaged in repeated conflicts of interest. Where the primary factor in attorney discipline is "'the effect upon, and perception of, the public and the bar,'" <u>Matter of Kerlinsky</u>, 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999), quoting <u>Matter of Finnerty</u>, 418 Mass. 821, 829 (1994), an indefinite suspension is the appropriate sanction. See <u>Matter of Crossen</u>, 450 Mass. 533 (2008); <u>Matter of Curry</u>, 450 Mass. 503 (2009); <u>Matter of Lupo</u>, <u>supra</u>. The order of the single justice indefinitely suspending the respondent from the practice of law is affirmed. The respondent may apply for reinstatement nineteen months before he would otherwise be entitled to do so. See S.J.C. Rule 4:01, § 18 (2).

<u>So ordered</u>.

    The case was submitted on the papers filed, accompanied by a memorandum of law.

    <u>Evan A. Greene</u>, pro se.